United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

A10 NETWORKS, INC., a California corporation,

Plaintiff,

v.

BROCADE COMMUNICATIONS SYSTEMS, INC., a Delaware corporation; F5 NETWORKS, INC., a Washington corporation,

Defendants.

Case No.: 5:11-CV-05493-LHK

ORDER GRANTING MOTION TO DISMISS

On September 9, 2011, Plaintiff A10 Networks, Inc. ("A10") filed this action against Defendant Brocade Communications Systems, Inc. ("Brocade") and F5 Networks, Inc. ("F5") for alleged patent infringement of U.S. Patent Nos. 7,139,267 ("'267 Patent") and 7,236,491 ("'491 Patent"). ECF No. 1. A10 filed an amended complaint on January 10, 2012, which dropped the '267 Patent infringement claim and dismissed F5. ECF No. 57. On January 27, 2012, Brocade filed a motion to dismiss A10's patent infringement suit for lack of subject matter jurisdiction and failure to join necessary and indispensable parties ("Mot."). ECF No. 63. A10 filed its opposition ("Opp'n) on February 10, 2012. ECF No. 68. Brocade filed its reply on February 17, 2012. ECF No. 70. Pursuant to Civil Local Rule 7-1(b), the Court finds this motion appropriate for

determination without oral argument. Having considered the parties' submissions and the relevant law, the Court GRANTS Brocade's motion to dismiss for the reasons set forth below.

## I. BACKGROUND FACTS

A10 provides "innovative networking and security solutions that help organizations accelerate, optimize and secure their applications." FAC ¶ 6. A10 alleges that Brocade's products, including Brocade's FastIron, NetIron, BigIron, and ServerIron series products, infringe the '491 Patent. FAC ¶ 11.

The application for the '491 Patent, entitled "Method and Apparatus For Scheduling For Packet-Switched Networks," was filed on September 19, 2001. Nguyen Decl. Ex. A, at 2. The '491 Patent is directed generally to the use of priority queuing and scheduling in the context of packet transmission. FAC ¶ 7. Prior to issuance, the inventors assigned their rights in the patent to the Industrial Technology Research Institute ("ITRI") in November 2001. Nguyen Decl. Ex. A, at 2. On June 26, 2007, the United States Patent and Trademark Office ("PTO") issued the '491 Patent. FAC ¶ 7.

In 2011, A10-Taiwan, Inc., the Taiwanese affiliate of A10, entered into contracts to acquire, among other patents, the '491 Patent from ITRI. Nguyen Decl. Ex. A, at 6-7. The terms of the '491 Patent acquisition are set forth in the January 31, 2011 Patent Assignment Agreement ("PAA"), Nguyen Decl. Ex. B, ECF No. 62-1, and an assignment agreement executed on March 18, 2011 ("March 2011 Assignment"), Nguyen Decl. Ex. A, ECF No. 64-1, at 6-7. On May 10, 2011, A10-Taiwan assigned all of its interest in the '491 Patent to A10. Nguyen Decl. Ex. A ("May 2011 Assignment"), ECF No. 64-1, at 8-9. The details of these agreements are discussed in further detail below, as necessary.

## II. LEGAL STANDARDS

### A. Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(1)

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss an action for lack of subject matter jurisdiction. Generally, a motion to dismiss for lack of subject matter jurisdiction presents only a procedural question, and does not raise issues unique to patent law. *Toxgon Corp. v. BNFL, Inc.*, 312 F.3d 1379, 1380-81 (Fed. Cir. 2002).

A jurisdictional challenge may be facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Where the attack is facial, the court determines whether the allegations contained in the complaint are sufficient on their face to invoke federal jurisdiction, accepting all material allegations in the complaint as true and construing them in favor of the party asserting jurisdiction. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975). Where the attack is factual, however, "the court need not presume the truthfulness of the plaintiff's allegations." *Safe Air for Everyone*, 373 F.3d at 1039. In resolving a factual dispute as to the existence of subject matter jurisdiction, a court may review extrinsic evidence beyond the complaint without converting a motion to dismiss into one for summary judgment. *See id.*; *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988) (holding that a court "may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction"). Once a party has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the opposing party bears the burden of establishing the Court's jurisdiction. *See Kokkonen v. Guardian Life Ins. Co of Am.*, 511 U.S. 375, 377 (1994); *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

Generally, if the Court grants a motion to dismiss, leave to amend will be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008); *see also Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (leave to amend should be granted unless "the pleading could not possibly be cured by the allegation of other facts").

**B. Standing in Patent Infringement Cases**

"Standing is a constitutional requirement pursuant to Article III and it is a threshold jurisdictional issue" that may be decided on a 12(b)(1) motion. *Abraxis Biosci., Inc. v. Navinta LLC*, 625 F.3d 1359, 1363 (Fed. Cir. 2010) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)), *cert. denied*, 132 S. Ct. 115 (2011). "Although dismissal for lack of subject matter jurisdiction is not a procedural question which is unique to patent law, standing to sue for patent infringement flows from the patent statutes. Subject matter jurisdiction therefore implicates

**United States District Court**
For the Northern District of California

Federal Circuit law on standing." *Bushnell, Inc. v. Brunton Co.*, 659 F. Supp. 2d 1150, 1163 n.15 (D. Kan. 2009) (citing *M.J. Madey v. Duke Univ.*, 307 F.3d 1351, 1358 (Fed. Cir. 2002)).

The requirement of standing imposes both constitutional and prudential limitations on federal court jurisdiction. *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1338 (Fed. Cir. 2007). The constitutional component of standing arises from the "case-or-controversy requirement of Article III." *Lujan*, 504 U.S. at 560. Constitutional standing is jurisdictional and must be present on the date a suit is filed. *WiAV Solutions LLC v. Motorola, Inc.*, 631 F.3d 1257, 1263-64 (Fed. Cir. 2010); *see also Int'l Gamco, Inc. v. Multimedia Games, Inc.*, 504 F.3d 1273, 1276, 1278-79 (Fed. Cir. 2007). "[T]he touchstone of constitutional standing in a patent infringement suit is whether a party can establish that it has an exclusionary right in a patent that, if violated by another, would cause the party holding the exclusionary right to suffer legal injury." *WiAV*, 631 F.3d at 1265. A party that holds "all legal rights to the patent as the patentee or assignee of all patent rights" has constitutional standing to sue for infringement in its own name. *Morrow*, 499 F.3d at 1339-40. "Additionally, if a patentee transfers 'all substantial rights' to the patent, this amounts to an assignment or a transfer of title, which confers constitutional standing on the assignee to sue for infringement in its own name alone." *Id.* at 1340 (quoting *Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal.*, 248 F.3d 1333, 1345 (Fed. Cir. 2001)). Finally, parties that hold "exclusionary rights and interests created by the patent statutes, but not all substantial rights to the patent," are also "injured by any party that makes, uses, sells, offers to sell, or imports the patented invention." *Id.* While such parties with exclusionary rights, but not all substantial rights to a patent, have constitutional standing to sue for patent infringement, they do not have prudential standing to sue in their own name. *Id.*

Prudential standing rules, unlike their constitutional counterparts, are "judicially self-imposed limits on the exercise of federal jurisdiction." *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004) (citation omitted). The prudential component of standing in a patent infringement case generally requires that a patent owner or co-owners be joined in any infringement suit brought by an assignee having fewer than all substantial rights in the patent. *Intellectual Prop. Dev.*, 248 F.3d 1333, 1347-48 (Fed.Cir. 2001); *see also Enovsys LLC v. Nextel*

*Communications, Inc.*, 614 F.3d 1333, 1341 (Fed. Cir. 2010) (noting that "[w]hen a patent is co-owned, a joint owner must join all other co-owners to establish standing."). In determining whether a party has prudential standing to sue in its own name, "labels given by the parties do not control. Rather, the court must determine whether the party alleging effective ownership has in fact received all substantial rights from the patent owner." *A123 Sys., Inc. v. Hydro-Quebec*, 626 F.3d 1213, 1218 (Fed. Cir. 2010) (citations omitted).

On this record, A10 appears to have received some exclusionary rights, such that it suffers legal injury from any alleged infringement of the '491 Patent by Brocade. Brocade does not contest that A10 has the right to practice the invention and the right to sue for infringement that occurred after the May 2011 Assignment agreement. *See Morrow*, 499 F.3d 1332, 1340 (Fed.Cir.2007) ("[T]he grant of an exclusive license to make, use, or sell the patented invention carries with it the right to prevent others from practicing the invention."); *Intellectual Prop. Dev.*, 248 F.3d at 1346 ("A party . . . that has the right to exclude others from making, using, and selling an invention described in the claims of a patent is . . . injured by another entity that makes, uses, or sells the invention."); *Ortho Pharma. Corp. v. Genetics Inst., Inc*., 52 F.3d 1026, 1031 (Fed.Cir.1995) (explaining that to have "standing in an infringement suit, a licensee must hold some of the proprietary sticks from the bundle of patent rights").

Moreover, Brocade repeatedly states that A10 does not have standing to sue *on its own*, without adding MOEA or ITRI, apparently conceding that A10 has constitutional standing and limiting Brocade's jurisdictional attack to prudential standing. *See, e.g.*, Mot. at 1 ("A10 does not have sufficient rights under the patent to sue without [MOEA and ITRI]."); *id.* at 8 ("PAA diminishes A10's ownership status to the point that it does not have *independent* standing."). Thus, the Court finds that A10 has constitutional standing to bring this infringement suit against Brocade and limits the Court's analysis to whether A10 has prudential standing to bring this infringement suit in its own name, without adding MOEA and ITRI. Accordingly, the Court examines whether the relevant agreements transferred to A10 all substantial rights in the '491 Patent.

"Substantial rights" in a patent include "exclusionary rights granted by the patent statutes and other important incidental rights, such as the right to assign those rights or vindicate them

through enforcement proceedings." *Morrow*, 499 F.3d 1332, 1346 (Fed. Cir. 2007). The Federal Circuit has "never purported to establish a complete list of the rights whose holders must be examined to determine whether a licensor has transferred away sufficient rights to render an exclusive licensee the owner of a patent. But [it] ha[s] listed at least some of the rights that should be examined." *Alfred E. Mann Found. For Scientific Research v. Cochlear Corp.*, 604 F.3d 1354, 1360 (Fed. Cir. 2010). These rights include: (1) "the exclusive right to make, use, and sell products or services under the patent"; (2) "the licensee's right to sublicense"; (3) "the nature of license provisions regarding the reversion of rights to the licensor following breaches of the license agreement"; (4) "the right of the licensor to receive a portion of the recovery in infringement suits brought by the licensee"; (5) "the duration of the license rights granted to the licensee"; (6) "the ability of the licensor to supervise and control the licensee's activities"; (7) "the obligation of the licensor to continue paying patent maintenance fees"; (8) "the nature of any limits on the licensee's right to assign its interests in the patent"; and (9) "the nature and scope of the exclusive licensee's purported right to bring suit, together with the nature and scope of any right to sue purportedly retained by the licensor." *Id.* at 1361. According to the Federal Circuit, "the nature and scope of the exclusive licensee's purported right to bring suit, together with the nature and scope of any right to sue purportedly retained by the licensor, is the most important consideration." *Id.* "Where the licensor retains a right to sue accused infringers, that right often precludes a finding that all substantial rights were transferred to the licensee." *Id.*

## III. DISCUSSION

### A. A10's Standing to Sue for Past Infringement

Brocade contends that A10 lacks standing to sue for past infringement of the '491 patent because the PAA [redacted]. Mot. at 6. Although A10 conceded at the February 1, 2012 case management conference that "the specific words that you need to have standing to assert a claim for past damages are not [in the assignment agreement],"A10 argues in its opposition that the Court can infer from the ordinary meaning of the PAA's terms ITRI's intent to confer upon A10 the right to recover for past infringement. Tr. 7:5-7; Opp'n at 5-7.

  "[T]he plaintiff in an [infringement] action . . . must be the person or persons in whom the legal title to the patent resided at the time of the infringement." *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1369 (Fed. Cir. 2008) (alterations in original; citation omitted); *see also Arachnid, Inc. v. Merit Indus., Inc.*, 939 F.2d 1574, 1579 (Fed. Cir. 1991) (collecting other cases). "A party may sue for past infringement transpiring before it acquired legal title if a written assignment expressly grants the party a right to do so." *Abraxis*, 625 F.3d at 1367 (citation omitted). Thus, "it is a great mistake to suppose that the assignment of the patent [necessarily] carries with it the right to sue for past infringement." *Minco Inc. v. Combustion Eng'g*, 95 F.3d 1109, 1117 (Fed. Cir. 1996) (internal quotation marks and citation omitted). To determine the legal effect of an agreement to transfer patent rights, a court "must ascertain the intention of the parties and examine the substance of what was granted." *See A123 Sys., Inc.*, 626 F.3d at 1218 (quoting *Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, 434 F.3d 1336, 1340 (Fed.Cir. 2006)).[1]

Here, the PAA, the March 2011 Assignment, and the May 2011 Assignment do not expressly manifest ITRI's intent to transfer to A10 the right to sue for past infringement.

A10 argues that the PAA and March 2011 Assignment as a whole manifest ITRI's intent to transfer the right to recover for past infringement. In support of this contention, A10 observes that the PAA provides that [redacted]. PAA, Art. 1. A10 adds that the March 2011 Assignment provides that ITRI assigned "all of [its] rights, titles, and interests with respect to" the '491 Patent to A10-Taiwan. Nguyen Decl. Ex. A, at 7. A10 also cites to Article 5.5 of the PAA, which states:

[1] The parties do not argue for a particular choice of law to govern the analysis of the agreements at issue, nor are their arguments about the legal effect of the agreements based on anything other than the plain language of the agreements. Moreover, none of the agreements contains a choice of law provision. Accordingly, the court "ascertains the intention of the parties and examine[s] the substance of what was granted" by examining the plain meaning of the "contractual language itself." *A123 Sys., Inc.*, 626 F.3d at 1218; *Abraxis*, 625 F.3d at 1364.

United States District Court
For the Northern District of California

In addition, A10 observes that Article 7.7 of the PAA states that "[redacted]" A10 argues that all these provisions in the PAA signal ITRI's intent not to retain its right to sue for prior infringement. The Court is not persuaded.

Despite the PAA provision [redacted] "[u]nder the general rule, the bare reference to all right, title, and interest does not normally transfer the right to sue for past infringement." *Minco Inc.*, 95 F.3d at 1117. While other provisions in the PAA [redacted]" these provisions [redacted] expand[s] the scope of the term 'right, title, and interest' to encompass the right to sue for prior infringement." *Id.* Indeed, the fact that the PAA [redacted] undermines a finding that ITRI transferred the right to sue for past infringement.

In addition, A10 misstates the law by contending that the PAA's [redacted] necessarily means that ITRI intended to convey that right to A10-Taiwan. In support of this argument, A10 relies on *Diodem, LLC v. Lumenis Inc.*, Case No. CV03–2142 GAF (RCx), 2005 WL 6219898 (C.D. Cal. Sept. 14, 2005). There, the district court held that the assignor retained the right to sue for past infringement because of a clause in the assignment agreement at issue, which stated that the "[assignor] shall retain the right to receive one hundred percent (100%) of the Past Damages, if any." *Diodem*, 2005 WL 6219898, at *6. *Diodem*'s holding, that the inclusion of this clear provision manifests the assignor's intent to retain its right to sue for past infringement, simply means that the assignor "never assigned" its right to sue for past

infringement. *See id.* at *7-8. This holding does not imply that a court can infer from an agreement's silence an intent to assign a right to sue for past infringement. Thus, without an express manifestation of ITRI's intent to confer to A10 the right to sue for past infringement, the Court will not infer "that the assignment of the patent [necessarily] carries with it" this particular right. *Minco*, 95 F.3d at 1117 (Fed. Cir. 1996); *see also Abraxis Bioscience*, 625 F.3d at 1367 (the right to sue for past infringement must be express, and cannot be inferred from an assignment of the patent itself) (citing *Arachnid*, 939 F.2d at 1579 n.7, 1580-81).

A10's reliance on *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359 (Fed. Cir. 2008), is similarly misplaced. In *Mars*, the Federal Circuit found that a 1996 agreement that expressly transferred the "entire interest" in a patent was a transfer of title, and therefore the assignor lacked standing to sue for acts of infringement occurring after the date of the agreement. *Id.* at 1370. Here, by contrast, the PAA and the March 2011 Assignment do not transfer the "entire interest" in the '491 Patent to A10-Taiwan, as ITRI and MOEA both retained significant interests in the '491 Patent. Thus, *Mars* is inapposite here.

A10's reliance on the May 2011 Assignment from A10-Taiwan to A10 is also unavailing. The May 2011 Assignment does not bear on the issue of whether ITRI transferred to A10-Taiwan the right to sue for past infringement in the PAA and the March 2011 Assignment. A10 argues that the May 2011 Assignment shows A10's intent to receive the right to sue for past infringement. Although the Court agrees that the May 2011 Assignment clearly shows A10's intent to receive the right to sue for past infringement, the May 2011 Assignment does not indicate anything about ITRI's intent to transfer that right to A10-Taiwan and thus whether A10-Taiwan possessed the right and thus could transfer it. Hence, the May 2011 Assignment does not have any bearing on the "intention of [ITRI and A10-Taiwan]" as to the transfer of the right to sue for past infringement. *See A123 Sys., Inc.*, 626 F.3d at 1218.

United States District Court
For the Northern District of California

The May 2011 Assignment does show that A10 knew how to effect an assignment of the right to sue for past infringement. The May 2011 Assignment states that A10-Taiwan transferred to A10 "all of [A10-Taiwan's] rights, titles and interests with respect to the Patent, including but not limited to the right to claim damages and seek all other remedies against any third party's infringement of the Patent *which occurred prior to the assignment of the Patent*." Nguyen Decl. Ex. A, at 9 (emphasis added). By stark contrast, such words of express assignment are absent from the March 2011 Assignment between ITRI and A-10 Taiwan.

For the foregoing reasons, the Court finds that the PAA and the March 2011 Assignment between ITRI and A-10 Taiwan "did not include any assignment of the right to recover for past infringement." *Arachnid Inc.*, 939 F.2d at 1576. The May 2011 Assignment between A10-Taiwan and A-10 tried to assign the right to recover for past infringement, but A10-Taiwan did not possess this right and thus could not assign this right to A10. Thus, A10 did not acquire the right to sue for past infringement of the '491 Patent and lacks standing to do so. Accordingly, the Court GRANTS Brocade's motion to dismiss as to A10's claim for past infringement of the '491 Patent.

**B. A10's Standing to Sue After the Date of the Assignment Agreement**

Brocade argues that, under Article 15 of the PAA, . Mot. at 7-9. Brocade contends that Article 15 . *Id.* at 8. A10 counters that are "very narrowly defined," and thus do not deprive A10 of standing. *See* Opp'n at 8-10.

In relevant part, Article 15.1 of the PAA states:



[redacted]

Nguyen Decl. Ex. A, at 8.

Where, as here, a party holds itself out to have legal title to the patent, the party "is entitled to sue in its own name alone . . . only if [the patentee] has transferred . . . all substantial rights in the patent. In order to determine whether [the patentee] has done so, [the Court] must look to the agreement between the parties and analyze the respective rights allocated to each party under that agreement." *Propat*, 473 F.3d at 1189-90; *see also A123 Sys., Inc.*, 626 F.3d at 1218 ("[T]he court must determine whether the party alleging effective ownership has in fact received all substantial rights from the patent owner."). However, unless the rights granted under an assignment agreement are the functional equivalent of an assignment of all substantial rights in the patent, the assignee is required to join the patent owner as a party, to meet prudential standing requirements. *Prima Tek II*, 222 F.3d at 1377. Although A10 purports to hold legal title to the '491 Patent, the provisions of the PAA, as discussed below, [redacted] such that A10 holds less than all substantial rights. Accordingly, A10 lacks prudential standing to sue for infringement of the '491 Patent in its own name.

[redacted] is "an important patent right because implicit in the right to exclude is the right to waive that right; that is, to license activities that would otherwise be excluded." *Morrow*, 499 F.3d at 1342; *see Prima Tek II*, 222 F.3d at 1380 ("[The] right to sub-license is an important consideration in evaluating whether a license agreement transfers all substantial rights."). In addition, [redacted]. *See Aspex Eyewear*, 434 F.3d at 1339, 1343 (although a reversionary interest retained by a licensor does not "compel" the conclusion that an agreement is a license rather than an assignment, it is "a factor weighing in favor of the agreement being a license rather than an assignment"); *see also Alfred E.*

*Mann*, 604 F.3d at 1360-61 (noting that a licensor's reversionary right is one "of the rights that should be examined" "to determine whether a licensor has transferred away sufficient rights to render an exclusive licensee the owner of a patent").

A10 argues that the conditions under which MOEA may exercise its sublicensing or reversionary rights are very limited and are unlikely to occur, and that [REDACTED]. The Court is not persuaded.

Article 15.1's [REDACTED] Such a limitation on a transferee's conduct has been held by the Federal Circuit to indicate that the transferee was an agent rather than a co-owner of the patent. *See Propat*, 473 F.3d at 1194 ("[T]he agreement requires Propat to 'use reasonable efforts consistent with prudent business practices' in its licensing and enforcement efforts, a provision that is more consistent with the status of an agent than a co-owner.").

Furthermore, the mere fact that MOEA may only exercise its rights under three circumstances that A10 describes as "very narrow[]" and "theoretical and unrealistic," does not compel a finding that A10 holds all substantial rights to the patent. It is undisputed that Article 15.2 [REDACTED], the plain meaning of the PAA's terms indicate that [REDACTED]. Under the terms of these agreements, the Court cannot "presum[e] that the transferred patent [will] never return to the assignor." *Aspex Eyewear*, 434 F.3d at 1343.

Moreover, "this case involves more than a reversionary clause." *Id.* Other factors weigh in favor of finding that less than all substantial rights in the '491 Patent were assigned by the PAA and the March 2011 Assignment. As discussed in Section III.A, ITRI retained the right to sue for

past infringement and the PAA ██████████. According to the Federal Circuit, "the nature and scope of the exclusive licensee's purported right to bring suit, together with the nature and scope of any right to sue purportedly retained by the licensor, is the most important consideration." *Alfred E. Mann*, 604 F.3d at 1361. Thus, the "nature and scope" of A10's right to sue for infringement of the '491 Patent is constrained by ITRI's retained right to sue, which is the "most important consideration" in determining whether A10 received all substantial rights in the '491 Patent. *Id.* Indeed, as the Federal Circuit has noted, "Where the licensor retains a right to sue accused infringers, that right often precludes a finding that all substantial rights were transferred to the licensee." *Id.*

Moreover, ██████████, which, although not dispositive, the Federal Circuit also considers an "important right." *Textile Prods, Inc. v. Mead Corp.*, 134 F.3d 1481, 1485 (Fed. Cir. 1998); *see also Morrow*, 499 F.3d at 1342; *see Prima Tek II*, 222 F.3d at 1380. Finally, ██████████ *See Abbott Labs. v. Diamedix Corp.*, 47 F.3d 1128, 1132-33 (Fed. Cir. 1995) (Noting that "right to make, use, and sell products described and claimed in the patent" and the fact that a "license [is] subject to rights of prior licensees" are the sort of "retained rights . . . that are commonly held sufficient to make a patent owner who grants an exclusive license a necessary party to an infringement action brought by the licensee.").

Accordingly, under the totality of these circumstances, the Court finds that the PAA transferred fewer than all substantial rights in the '491 Patent to A10, and thus, A10 lacks prudential standing to sue for infringement of the '491 Patent in its own name.

**C. Joinder of ITRI and MOEA**

Since "[j]oinder is an issue not unique to patent law, [the Federal Circuit] applies the law of the regional circuit" on Rule 19 motions. *A123 Sys.*, 626 F.3d 1213, 1220 (Fed. Cir. 2010); *see also Dainippon Screen Mfg. Co., Ltd. v. CFMT, Inc.*, 142 F.3d 1266, 1269 (Fed. Cir. 1998) (applying Ninth Circuit law to joinder). A motion to dismiss based on Rule 19 requires the court to engage in "three successive inquiries": (1) whether the absent party is "necessary"; (2) whether it is

United States District Court
For the Northern District of California

"feasible" to join the absent, necessary party; and (3) whether the absent party is "indispensable." *EEOC v. Peabody W. Coal Co.*, 610 F.3d 1070, 1078 (9th Cir. 2010) ("*Peabody II*"). The Court discusses these inquiries in turn.

**1. Necessary Party**

Under the first step, the Court must determine whether an absent nonparty should be "required to be joined if feasible" under Rule 19(a). *Id.* A nonparty who satisfies Rule 19(a) is deemed "necessary" in the sense that such person's joinder is "desirable in the interests of just adjudication." *EEOC v. Peabody W. Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005) ("*Peabody I*") (internal quotation marks and citations omitted). The Court "must determine whether the absent party has a legally protected interest in the suit," and if so, whether "that interest will be impaired or impeded by the suit." *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990). In relevant part, Rule 19(a)(1) provides that:

> [a] person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a). However, "'[t]here is no precise formula for determining whether a particular nonparty should be joined under Rule 19(a) . . . . The determination is heavily influenced by the facts and circumstances of each case.'" *Peabody II*, 610 F.3d at 1081 (quoting *N. Alaska Envtl. Ctr. v. Hodel*, 803 F.2d 466, 468 (9th Cir. 1986) (internal citations omitted)).

As discussed above, both ITRI and MOEA have substantial rights in the '491 Patent. ITRI retained the right to sue for past infringement; [redacted]

[redacted] Thus, because A10 "acquired less than all substantial rights" in the '491 Patent, ITRI and MOEA are necessary parties. *A123 Sys.*, 626 F.3d at 1219. Indeed, disposition of this action without the presence of ITRI and MOEA "may as a practical matter impair or impede [ITRI and MOEA's] ability to protect [their] interest[s]." Fed. R. Civ. P. 19(a)(B)(i). Furthermore, as discussed above, ITRI retained the right to sue for past infringement. Thus, failure to join ITRI could expose Brocade to the risk of incurring double, multiple, or otherwise inconsistent liability obligations if, for example, ITRI decides to sue for past infringement after the conclusion of this lawsuit. *See Abbott Labs*, 47 F.3d at 1133 ("The purpose of Rule 19-to avoid multiple suits or incomplete relief arising from the same subject matter-is thus served by joinder."); Fed. R. Civ. P. 19(a)(1)(B)(ii). Similarly, if MOEA [redacted], it too could sue Brocade after the conclusion of this lawsuit. Thus, ITRI and MOEA are necessary parties. Accordingly, the Court turns to the second step of the Rule 19 analysis: the feasibility of joinder.

**2. Feasibility of Joinder**

If the absent nonparty is a "necessary" party under Rule 19(a), the second step requires the Court to determine whether it is feasible to order that the absent nonparty be joined. *Peabody II*, 610 F.3d at 1078. Joinder is not feasible, for example, when venue is improper, when the absent nonparty is not subject to personal jurisdiction, or when joinder would destroy subject matter jurisdiction. *Peabody I*, 400 F.3d at 779.

According to Brocade, "ITRI is an institute organized under the laws of the Republic of China, and MOEA is a Taiwanese national entity," and neither entity has any contractual obligation to participate in this action under [redacted]. Mot. at 11. On this record, the basis for personal jurisdiction over these two entities is questionable. *Cf. Peabody I*, 400 F.3d at 779. Moreover, in their briefing and at the February 1, 2012 case management conference, the parties agreed that joinder of ITRI and MOEA is not feasible. *See* Mot. 11; Opp'n 14; Tr. 5:7-11 (The Court: "If you had to add Industrial Technology Research Institute and Taiwan [Ministry] of Economic Affairs as a party, could you do that? Mr. Flagel: I don't think so, your Honor."). While joinder may be difficult, the Court will grant leave to amend to allow A10 the opportunity to

United States District Court
For the Northern District of California

attempt to join ITRI and MOEA. Accordingly, the Court turns to the third step of the Rule 19 analysis.

**3. Indispensability of the Parties**

Finally, if joinder is not feasible, the Court must proceed to the third step, determining under Rule 19(b) "whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). In conducting its Rule 19(b) analysis, the Court should consider the following factors:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by:
>
> > (A) protective provisions in the judgment;
> >
> > (B) shaping the relief;
> >
> > (C) or other measures;
>
> (3) whether a judgment rendered in the person's absence would be adequate; and
>
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

*Id.* An "indispensable party" whose absence from the case requires dismissal "is one who not only has an interest in the controversy, but has an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience." *Peabody II*, 610 F.3d at 1078 (internal quotation and citation omitted).

As the Supreme Court has stated, "the presence of the owner of the patent as a party is indispensable, not only to give jurisdiction under the patent laws, but also in most cases to enable the alleged infringer to respond in one action to all claims of infringement for his act, and thus either to defeat all claims in the one action, or by satisfying one adverse decree to bar all subsequent actions." *Indep. Wireless Tel. Co. v. Radio Corp. of Am.*, 269 U.S. 459, 468 (1926). These considerations make ITRI and MOEA indispensable here. Moreover, the four factors under the Rule 19(b) analysis support dismissal here.

*First Factor*. The first factor looks at the extent to which a judgment rendered in ITRI's and MOEA's absence might prejudice ITRI, MOEA, or the existing parties. Brocade contends that if judgment were rendered in the absence of ITRI and MOEA, [REDACTED]. Reply 9. A10 argues that both entities agreed to disclaim their involvement in actions against third parties instituted by A10. Opp'n at 14.

As discussed in more detail in Section III.A, while Article 5.5 of the PAA [REDACTED], nothing in the language of Article 5.5 [REDACTED]. Likewise, [REDACTED], PAA Art. 5.1, [REDACTED], PAA Art. 15. A judgment in the absence of ITRI and MOEA could prejudice these absent parties' rights. For example, a finding that the '491 Patent is invalid would prevent ITRI from bringing suit or MOEA [REDACTED]. Accordingly, the first Rule 19(b) factor weighs in favor of dismissal.

*Second factor*. The second factor -- the extent to which any prejudice could be lessened or avoided by protective provisions in the judgment, shaping the relief, or other measures -- also favors dismissal here. Brocade argues that there is no reasonable way to "shape" the relief to avoid prejudice to ITRI or to MOEA's interests in the '491 Patent without their presence in the lawsuit. Brocade also contends that the prejudice to both parties "cannot be lessened or avoided by fashioning an invalidity ruling that affects only" A10. Mot. at 11 (citing *A123 Sys.*, 626 F.3d at 1221). A10 contends that such prejudice can be avoided by inviting both entities to join as plaintiffs and waive any objections as to personal jurisdiction. Opp'n at 14-15.

The Court is not persuaded that there is any way, short of dismissal, to lessen the prejudice to any of the absent parties here. Moreover, A10's proposal to lessen the prejudice to the absent parties can essentially be achieved by dismissing this case with leave to amend to add ITRI and MOEA.

*Third factor*. The third factor looks at whether a judgment rendered in a party's absence would be adequate. Brocade argues that the third factor weighs in favor of dismissal because of the

United States District Court
For the Northern District of California

danger of duplicative litigation against Brocade if ITRI were to sue Brocade for past infringement or if MOEA were to strip A10 of its present rights and restart this litigation. Mot. at 11-12. A10 argues that "a judgment rendered in ITRI's and the MOEA's absence would be adequate to all parties" and that "Brocade is not at risk of incurring multiple or inconsistent obligations." Opp'n at 15. The Court finds that if ITRI and MOEA refused to join this lawsuit, and judgment were entered in their absence, there is a real danger that Brocade may be subject to multiple lawsuits over the same subject matter. For example, as discussed above in Section III.A, ITRI is free to assert the '491 Patent in a claim for past infringement. Such an outcome would indeed prejudice Brocade and waste judicial resources. Thus, the third factor also militates in favor of dismissal.

*Fourth factor*. The fourth factor -- whether A10 would have an adequate remedy if the action were dismissed for nonjoinder -- weighs in favor of dismissal here. If this action is dismissed for failure to join ITRI and MOEA, it is true that A10 would lack an adequate remedy for any violation of its rights in the '491 Patent. However, as discussed in Section III.A and B, under the PAA, [redacted]. Thus, all of the Rule 19(b) factors favor dismissal.

Accordingly, because ITRI and MOEA are necessary and indispensable parties whose joinder is infeasible, A10's first amended complaint is dismissed without prejudice.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Brocade's motion to dismiss A10's complaint for lack of prudential standing and for failure to join necessary and indispensable parties. A10 has leave to amend its complaint to add ITRI and MOEA as parties within **21 days**. Pursuant to Federal Rule of Civil Procedure 15(a)(2), A10 may not add any additional claims without the written consent of Brocade or without obtaining prior leave from the Court.

**IT IS SO ORDERED.**

Dated: May 29, 2012

Lucy H. Koh
LUCY H. KOH
United States District Judge